HEZEKIAH KELLY *v.* THE NESHANIC MINING COMPANY.

A judgment which was not entered until after the appointment of a Receiver under the
"Act to prevent frauds by incorporated companies" is not entitled to preference.

*Semble*, that a judgment which was not entered until after injunction granted under
the said act is not entitled to preference.

*Semble*, that the Receiver, under the said act, should sell the property, irrespective of
the incumbrances, and pay the incumbrances, according to their priority, out of
the proceeds. But that the court may direct the Receiver to sell subject to the
incumbrances.

As to the question whether the Receiver should sell the engine, mining tools and im-
plements with the mine lands or separately, the court left it to the discretion of the
Receiver, to be determined by inquiries to be made by him as to the probability of
finding ore by continuing the works ; no ore having yet been found.

On the 12th November, 1847, Hezekiah Kelly filed a bill,
under the act relating to insolvent corporations, against the Ne-
shanic Mining Company.

The bill charges, that the said Company have suspended their
ordinary business, from November 9th, 1847, (having before
charged that the company ceased paying &c, from August 2d,
preceding;) and that the company, as the complainant has heard
and believes, are insolvent.

That the company, on the 13th of May, 1847, employed the
complainant as a superintendent, at the rate of $1,500 per an-
num, which sum, with traveling expenses, the company agreed
to pay monthly.

That the Company have not paid him monthly; but that they
are indebted to him in $600 for his services and traveling ex-
penses.

That the Company are indebted to him in the further sum of
$400, paid, laid out and expended for the use of the company, at
their request, in the purchase of tools and the payment of labor-
ers ; which said sums were paid and advanced by the complainant
from September 1, to November 8, 1847.

The bill states that the Company are indebted to divers persons,

(naming them,) in divers sums, amounting in all to $4,494 43, including a debt stated to be due to Jacob Rockafellow of $2,118 97.

That J. H. Bill pretends that he has a claim against the Company, for money advanced and services rendered, of $500.

That the value of the real estate of the Company is $3,000; the value of the engine and machinery $750; the value of the pump, tools, &c, $160; which is all the property and assets of the Company, as far as the complainant knows and believes, amounting to $3,910.

The bill prays a discovery of the property of the company; and that the complainant and the other creditors and stockholders of the company who may come in may be paid; and that the company be injoined from receiving debts and from transferring debts or property, and from exercising their franchises; and that a receiver be appointed.

The injunction prayed was allowed. On the 22d March, 1848, a demurrer was filed to the bill, by the company.

On the same day, Janet Blair filed a bill against the company for the foreclosure of two mortgages on their real estate; one dated April 20 1847, given by Anthony Dey to the said Janet Blair, to secure the payment of a bond, of the same date, given by Dey to her, conditioned for the payment of $500 on or before the 1st of July then next, with interest from and after the 1st of May then next; which mortgage is stated to have been acknowledged on the 3d June, 1847, and to have been recorded June 15, 1847; the other mortgage dated the same 20th of April, 1847, given by Anthony Dey to the said Janet Blair, to secure the payment of a bond, of the same date, given by Dey to her, conditioned for the payment of $2,000 on or before the 1st of May, 1848, with interest from the 1st of May 1847; which last mentioned mortgage is stated to have been acknowledged on the 24th of April, 1847, and to have been recorded on the 28th of that month.

This bill states, that the said complainant, Janet Blair, has been informed that, previous to the execution and delivery of the said two mortgages, the said Dey had executed a mortgage on the same lands to Jacob Rockafellow, for $2,000, dated during or about some day in April, 1847; and the said Janet admits that,

if the said mortgage is any lien, it is a lien prior to her said mortgages. But this bill says that the whole sum due Rockafellow on his said mortgage was $2,006 67 on the 19th May, 1847, when that amount was lawfully tendered to the said Rockafellow, in specie, in payment of his said bond and mortgage. That after the execution and delivery of the before mentioned mortgages the said premises were conveyed to the Neshanic Mining Company by said Dey and his wife.

This bill states, that the said premises are in such a condition that they cannot be divided without materially injuring their value and jeopardizing the securities thereon ; and prays that the whole premises may be sold.

Subpœna is prayed against Rockafellow, Dey, and the Neshanic Mining Company.

On the 25th May, 1848, the petition of John G. & Joseph H. Reading, Jacob Rockafellow, and five others therein named was presented, stating the filing of the bill of Hezekiah Kelly ; that the Company are indebted to the petitioners as follows : To the said Readings, they being partners, in $206 92 ; to Stinemire & Schamp in $21 92 ; to Jacob Rockafellow in $45 63, besides the amount due on his mortgage for $2,000 ; to Charles Green in $90 75 ; to John Rockafellow in $44 25, and to Thomas Gray in $34 49 ; these being the petitioners named in the petition. The petitioners pray to be permitted to come in under the bill filed by Kelly. The petition states that the said Company suspended their ordinary business on the 9th of November, 1847, and that their business had since remained and still was so suspended and stopped ; and that the machinery and tools of said Company are rapidly becoming spoiled for want of any care and attention.

That since the argument of the motion for the appointment of a receiver on the 27th November, 1847, and on the 22d May, 1848, Janet Blair has filed a bill, setting forth &c, (stating the contents, or part thereof.) That since the argument of said motion and since the service of the injunction on the Company, and notwithstanding, a writ has been issued out of the Supreme Court wherein one Marmaduke Moore was plaintiff, against the said company, in trespass on the case, returnable the first Tues-

day in January 1848, returned with the following indorsement thereon : " Appearance is signed for the defendants by order of the Company by Wm. Pennington, Attorney of Company." And that, by the consent of the said defendants, and by their confession, judgment was entered against them in said suit on the 5th April, 1848, and the damages assessed by the court at $1,090 50 besides costs ; for which sum judgment was entered against the said defendant, in favor of said Moore, by virtue of the following confession of judgment on the bottom of the said assessment : "The above are agreed to as the amount of damages in this cause ; by order of the defendants, Wm. Pennington, Attorney for defendants, April 4th, 1848." Said assessment setting out the claim to be for cash advanced by the said Moore to the said Company on the 29th October, 1847, together with the interest thereon ; the said Moore making no affidavit that the same was justly due him, nor any other person making such affidavit for him.

The petitioners say they are informed and believe that the declaration in the said cause was not brought to the office of the clerk of the Supreme Court until after the 3d Tuesday in March, 1840 ; but that the same is marked filed as of the proper time for filing the same, by the collusion and consent, as the petitioners believe, of the said defendants in said suit.

That execution has been issued on the said judgment, to the sheriff of Hunterdon, commanding him to make the amount of said judgment out of the property of the said complainant.

The petitioners state, that neither the said mortgage for $2000 to Janet Blair mentioned in the said bill, nor the said claim of Marmaduke Moore for cash advanced, was mentioned or inserted in the schedule made by J. H. Bill, marked exhibit A. in this cause, of the liabilities and assets of said company ; nor are they mentioned or included in the affidavits of said J. H. Bill made in this cause, though in one of said affidavits he declares that his position in the company has enabled him to understand with accuracy its financial condition and the state of its accounts with individuals.    Neither has said Dey, in his affidavit concerning the affairs of the company, mentioned either the said $2000 mortgage to Janet Blair or the claim of Marmaduke Moore for cash advanced ; but the said J. H. Bill has mentioned in his schedule

the mortgage of $500 to Janet Blair; all which affidavits were read before the court on the argument of the motion aforesaid for a receiver.

The petition prays an injunction restraining the sheriff of Hunterdon from selling the property of the said company by virtue of the said execution in favor of said Moore, and from all other proceedings thereon, until the further order of the court; and that a receiver be appointed to receive and take charge of all moneys, goods and lands of the said Neshanic Mining Company, for the benefit of the creditors and stockholders of the said company.

The petition was subscribed and sworn to by J. H. Reading, Benjamin Stinemire, Jacob Rockafellow, Charles Green, John Rockafellow and Thomas Gray.

The injunction prayed in this petition was allowed, and a receiver appointed, on the the 23d May, 1848.

On the 6th June, 1848, a supplemental bill was filed by Hezekiah Kelly and the said petitioners against the said company and Janet Blair, Marmaduke Moore, and Joseph H. Bill, stating the original bill filed by Kelly, and the filing of the said petition; that an injunction issued on the said bill of said Kelly; that an injunction issued on the filing of the said petition, pursuant to the prayer thereof; and stating the appointment of a receiver. (Amplius B. Chamberlain.) And showing, by way of supplement, that, since the filing of the original bill by Kelly, Janet Blair had filed her bill, (setting forth the contents thereof). That the complainants have been informed, believe and expressly charge, that the whole price or consideration paid or agreed to be paid by Dey for the premises was $4000; $2000 of which he paid in cash, and executed to Jacob Rockafellow, of whom he purchased the premises, a mortgage on the said premises, dated April 20, 1847, recorded April 27, 1847, to secure the payment of the remaing $2000. That at the time or before the conveyance of said premises by Dey to the Neshanic Mining Company Janet Blair was paid the sum of $1500 and received and took a mortgage of $500 on the said premises, in full satisfaction of her said mortgage for $2000. That said Dey, in his deed of the premises to the Neshanic Mining Company, recorded &c., has

fully set out all the incumbrances upon the said premises which remained due and unpaid at the time of the making of said deed, and has therein stipulated for the payment of the same by the said company; which stipulation the said company have thereon agreed to, and in testimony thereof, have thereto affixed the common seal of the said company; and the signature of Isaac A. Johnson, the president of the said company, is thereto subscribed. But that the said mortgage to Janet Blair for $2000 is not therein mentioned or referred to, because it had been fully paid and satisfied in manner aforesaid.

This bill charges that the mortgage to Janet Blair for $500 was not executed and given on the 20th of April, 1847, but that the same was not executed and given before May 30, 1847.

He states the judgment of Moore against the company, entered on the 5th of April, 1848, for $1090 50, besides costs, and that an execution issued thereon to the sheriff of Hunterdon; and charges that it was obtained by the collusion and consent of the company, notwithstanding the injunction restraining the company from incumbring or otherwise disposing of any of the real estate of the company; stating the facts stated in the said petition in relation to the said judgment. It there charges that no money was advanced by Moore to the said company on the 29th October nor at any other time; and that the said judgment is fraudulent, and was obtained by the collusion and consent of the said company to avoid the injunction issued by the court, and to incumber the property of the said company, and to prevent the complainants from obtaining the moneys due them from the said company, and to cover and fraudulently protect the property of the said company from their creditors; the company having suspended &c. on the 9th of November, 1847, and having remained so suspended, and no money having been laid out and expended by them since that time.

That the defendants produced and offered as evidence in this cause the affidavit of J. H. Bill, with a schedule therewith of the liabilities and assets of the said company, which is marked exhibit A. in this cause, dated November 27, 1847, in which the said bill declares, &c. (as before stated.) That the said schedule and affidavit do not include or mention the mortgage for $2000

pretended by Janet Blair to be still existing, nor the said judgment obtained by Moore, nor any sum as being due to him; nor is his name mentioned in said schedule and affidavit.

That the whole of the debts due and owing at that time by the said Company, and therein particularly mentioned and set forth, still remain unpaid.

That said J. H. Bill further stated in his said affidavit that he was, and had been since May 18th then last, the clerk and general agent of the said Company, and had been during the greater part of that time at their works, his business being to take charge of the buildings, and to pay out the funds of the Company, and generally to attend to the business of the Company; and that his position in the Company had enabled him to understand with accuracy its financial condition and the state of its accounts with individuals.

That the defendants produced and offered as evidence an affidavit in the cause made by A. Dey, by whom the said mortgage of $2,000 was given to Janet Blair, in which affidavit he states that he has no doubt that the debts of the said Company are truly stated by said J. H. Bill in his affidavit, which had been read to him; which affidavit of said Dey is dated November 26, 1847.

That since the filing of the original bill by Kelly the said J. H. Bill has obtained a judgment against said Company for $832 72, besides costs; which judgment was obtained in the Circuit Court of Essex, on the 24th May, 1848, [and was docketed in the Supreme Court; and that an execution was issued thence to the Sheriff of Hunterdon; but the complainants charge that the said judgment is fraudulent and void, and that the said Company were not indebted to the said J. H. Bill; and if indebted at all, are not indebted beyond the amount of $561 83, as appears by the said affidavit and schedule of said J. H. Bill, dated Nov. 27, 1847, in which he sets down his own demand at that sum.

This bill prays that Janet Blair, Marmaduke Moore and J. H. Bill be made defendants in this cause with the said Company; and that they may answer, respectively; and that the said Janet be decreed to surrender the said mortgage for $2,000; and that

37

Moore and Bill be restrained from any further proceedings on their respective judgments; and that the receiver heretofore appointed be directed not to pay to the said Janet her said claim for the amount of the said mortgage; and not to pay to the said Moore and Bill their respective judgments; and for further relief.

On the 27th June, 1848, an order limiting creditors was taken.

On the 21st Sept. 1848, an order staying sale on the judgment of bill was made; and on the same day a decree *pro. con.* was taken against the Company on the original bill of Kelly against the Company; and on the same day a decree *pro con.* on the supplemental bill was taken against Moore, Bill and Janet Blair.

On the 22d Sept. 1848, an order was made that the receiver sell the real estate subject to the mortgage of Rockafellow and the $500 mortgage of Janet Blair.

On the 23d Sept. 1848, an order was made giving the receiver 30 days to answer the bill of Janet Blair against the Company.

On the 3d Nov. 1848, the receiver put in his answer to the bill of Janet Blair.

He denies that there is anything due her upon the mortgages stated in her bill; but says that the same are, as he is informed and believes, entirely fraudulent and void. That Dey, having obtained a transfer of the stock of an insolvent Company, reorganized it, among his relatives and friends, by distributing a few shares to each; they becoming Directors in the new concern. That Dey also procured an assignment to himself of an article between Peter I. Clark, Esq., and Jacob Rockafellow for the purchase and sale of the mining property formerly owned by the old Neshanic Mining Company.

This answer states, (giving the facts and allegations on which the statement is founded,) that the $500 mortgage to Janet Blair, as well as the $2,000 mortgage to her, is fraudulent and void.

On the 17th Dec. 1848, Rockafellow put in his answer to Janet Blair's bill.

On the 2d October, 1848, Janet Blair presented her petition, stating &c.; and stating that it would be injurious to the interests of the persons interested in the property to sell the engine, pump and fixtures separately. That she has heard of the order directing the receiver to sell the property subject to the mortgage of Rockafellow and the $500 mortgage of Janet Blair, thereby excluding her claim on her $2,000 mortgage; and no information was given whether they intended to sell the engine, pump and fixtures separate from the farm. She therefore prays an order on the receiver to suspend the sale until the matters of fact can be inquired into, and especially to injoin the sale of the engine, pump and fixtures separate from the farm.

The petition of Janet Blair and Joseph H. Bill was also presented, stating &c.; and praying that all orders restraining the Sheriff from proceeding to sell under the judgment and execution of said Jos. H. Bill may be set aside; and thereupon it was ordered that cause be shown on the 30th Oct. 1848, why all orders restraining the Sheriff from proceeding to execute the judgment of Jos. H. Bill should not be set aside, and the said Sheriff be permitted to proceed with the sale of the real estate of the Company, together with the machinery; and why the sale of the same by the receiver should not be injoined; and it was further ordered that the receiver and the Sheriff be injoined from selling until the further order of the court; and that the sale be adjourned from time to time until the foregoing matters be determined; and that a copy of said order be served ten days prior to the said 30th of October.

*Geo. A. Allen* for the general creditors.

*F. T. Frelinghuysen* for Blair and Bill.

THE CHANCELLOR. The question now submitted is, whether the judgment creditors, or either of them, shall be permitted to

proceed to sell under execution; or whether the receiver shall sell; and, in either case, how and when the property shall be sold; whether the engine, pump and machinery shall be sold separately from the farm, or with the farm; or whether the sale shall be deferred altogether until the question as to the validity of the judgments, and of the mortgages except the mortgage to Rockafellow, shall be determined, in the suits now pending, in which their validity is disputed.

The bill of Hezekiah Kelly was filed Nov. 12, 1847, charging that the Company, having ceased to pay debts on the 2d of Aug. 1847, suspended their ordinary business, for the want of funds to carry on the same, on the 9th of Nov. 1847.

On this bill an injunction was allowed, restraining the Company from collecting debts or transferring property.

The judgment of Moore was entered on the 5th April, 1848, on a writ returned in January, 1848.

The receiver was appointed on the 23d May, 1848.

The judgment of Joseph H. Bill was entered on the 24th of May, 1848.

The judgment of Bill was entered subsequently both to the injunction and the appointment of the receiver. Moore's suit, in which his judgment was obtained after the issuing of the injunction; and his judgment was entered before the appointment of the receiver.

The 5th section of the "Act to prevent frauds by incorporated companies" provides, that when any incorporated company shall have become insolvent, it shall be lawful for any creditor or stockholder to apply to the Chancellor, by petition or bill, setting forth &c., for a writ of injunction and the appointment of a receiver; whereupon the Chancellor may hear &c.; and if it shall be made to appear to the Chancellor that the said company has become insolvent &c., it shall be lawful for the Chancellor to issue an injunction to restrain the company from exercising any of its privileges or franchises, and from receiving any debts, and from paying out, selling, assigning or transferring any of the estate, moneys, funds, lands, tenements or effects of the company. And the 7th section of the said act provides, that it shall be lawful for the Court of Chancery, at the time of ordering the

said injunction or at any time afterwards during the continuance of the injunction, to appoint a receiver with full power to demand, sue for, receive and take into his possession, all the goods &c., credits, moneys and effects, lands, books, papers, choses in action and property of every description belonging to the company at the time of their insolvency or suspension of business; and to sell, convey and assign all the said real and personal estate; and to pay into court all the moneys and securities arising from such sale, or which the receiver shall receive by virtue of the authority vested in him, to be disposed of by him, from time to time, under the order of the court, among the creditors of the company.

And the 15th section of the said act provides, that, in the distribution of the funds of the company, the creditors shall be paid proportionally to the amount of their respective debts, excepting mortgage and judgment creditors when the judgment has not been by confession for the purpose of preferring creditors.

Independent of the question whether the judgments of Moore and of Bill, in this case, may or may not be considered as having been by confession for the purpose of preferring creditors, is either of them entitled to preference over creditors at large.

Bill's judgment can have no such preference, because it was not entered till after the appointment of the receiver.

Moore's judgment was entered before the appointment of the receiver, but not till after the injunction against the company as an insolvent company was issued. I am of opinion that no judgment is entitled to preference unless it was obtained before the granting of the injunction under the provisions of the said act. The whole property is locked up by the injunction; and the receiver, by the terms of the act, is to take possession of all the property belonging to the company at the time of the insolvency or suspension of business which induced the injunction. No other reading can be given to the act; and to attribute any other intention to the Legislature would be to suppose they did not foresee the consequences which would result from permitting judgments obtained after the injunction to have preference. Judgments would be confessed after the injunction.

It may be said that a judgment confessed after the injunction would clearly be for the purpose of preferring creditors, and would therefore be within the provision of the act denying preference to judgments by confession for the purpose of preferring creditors. But suppose a suit regularly commenced by one creditor and proceeding regularly when the injunction was issued, and afterwards that creditor proceeded regularly and obtained his judgment in due course, would that judgment have preference?

If a judgment regularly obtained after the injunction would be preferred, would it make any difference whether the suit was commenced before or after the injunction? It would not be a judgment confessed; and, if the act contemplated that judgments obtained otherwise than by confession after the injunction should have preference, the language of the act makes no difference between suits commenced before and those commenced after the injunction.

I am inclined to think that the act contemplated only judgments entered before the injunction.

If a judgment obtained after the injunction might have preference if not by confession &c., then the question as to Moore's judgment would be whether it is not to be considered as a judgment by confession; and if so, whether it was for the purpose of giving preference.

I think that the orders restraining sales under the judgments should stand; and that the sale should be made by the receiver.

The next question is, how the sale shall be made: 1st, whether subject to the mortgage, or not so subject; and 2d, whether the farm and the mining tools and implements shall be sold together, or separately.

As to the mortgages of Janet Blair, their validity is disputed, and cannot be determined now. And in all cases of this kind, where receivers are appointed under this act, there may be a question as to the validity of asserted liens. Is the receiver to wait until such question can be determined in the regular course of litigation; or is he empowered by the statute to sell irrespective of the incumbrances or alleged incumbrances?

By the 17th section he is to receive and take possession of all

the property belonging to the Company at the time of their suspension, and sell the same, and bring the proceeds into court, to be distributed from time to time, under the order of the court; and the 15th section provides, that in the distribution of the funds the creditors shall be paid proportionally to the amount of their respective debts, except mortgage and judgment creditors, when &c.

It seems to me that the idea was that the receiver should sell the property irrespective of the incumbrances, and pay the incumbrances, according to their priority, out of the proceeds.

Perhaps the court might exercise a discretion and allow the property to be sold subject to admitted incumbrances, if it were probable that in that way the sale would yield a large sum for distribution among the other creditors, leaving such mortgage an existing lien. In that case the receiver would sell only the equity of redemption; and, whether the holder of that mortgage or some other person bought at such sale, the receiver would convey, not the property, but the equity of redemption only.

If it be clear that the best way to sell, in this case, would be to sell subject to Rockafellow's mortgage, and if both parties desire it, I should be willing to direct the receiver to sell in that way. If not, let the receiver sell on the understanding that the purchaser is to have a free title.

As to whether the farm and the mining machinery should be sold separately or together, there are no means of determining; nothing to guide the discretion of the court. No ore has yet been found. If there is no ore there, it is manifest the machinery should be sold separately from the farm; for if the lands can only be used for farming purposes, the machinery is of no use there. True, if the probability that ore will be found is so decided that it is clear that further progress should be made, and that whoever should buy would buy with a view of continuing operations for reaching ore, it would be better to sell the machinery with the land. But upon this question sufficient light has not been given to enable me to decide upon the probability of reaching ore.

But one of two courses is left: either to direct the receiver to sell in such way in this respect as he shall, on proper inquiry

and investigation, think most advisable, or to act upon the best conjecture I can form myself as to the best mode of sale.

One thing may be said, the machinery, to be taken down and removed, might be of little value.   The value of it to a person wanting it to take to some other place would be less by the expense of taking it out of the mine and removing it to such place.

I must suppose that the receiver will act diligently and fairly in inquiring and determining as to the probability of finding ore ; and I am inclined to direct him to sell in such way in this respect as, upon such inquiry and investigation as I have suggested, he shall think most advisable.


Order accordingly.